**ORECK CORPORATION, Plaintiff-Appellee Cross-Appellant,**

v.

**U.S. FLOOR SYSTEMS, INC., Defendant-Appellant Cross-Appellee.**

No. 85–3297.

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1986.

Rehearing and Rehearing En Banc Denied Dec. 10, 1986.

Larry L. Coats, Raleigh, N.C., Keaty & Keaty, Thomas S. Keaty, David M. Kelly, New Orleans, La., for U.S. Floor Systems, Inc.

Paul T. Meiklejohn, Hopgood, Calimafda, Kalil, Blaustein & Judlowe, Michael W. Ferrell, New York City, Liskow & Lewis, George W. Pugh, Jr., New Orleans, La., for Oreck Corp.

Before GARWOOD and HILL, Circuit Judges, and WILL [*], Senior District Judge.

WILL, Senior District Judge:

In this action for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.,* a jury found for the plaintiff Oreck Corporation ("Oreck") and against the defendant U.S. Floor Systems, Inc. ("U.S. Floor"). On appeal and cross-appeal the parties raise numerous issues, only two of which we must decide: (1) whether U.S. Floor had sufficient contacts with the state of Louisiana to be subject to the jurisdiction of a district court located in Louisiana, and (2) whether there is sufficient evidence to support the jury's finding that U.S. Floor's use of Oreck's "XL" trademark resulted in a likelihood of confusion. We conclude that U.S. Floor was subject to personal jurisdiction in the Louisiana district court, but that the jury verdict is not supported by the evidence. Accordingly, we reverse.

### I.

U.S. Floor manufactures a line of carpet cleaning equipment known as extraction machines under the federally registered trademark "STEAMEX." STEAMEX models are identified by series (e.g., "PRO" or "DELUXE") and capacity (e.g., 10 for 10 gallons). Thus, a ten gallon carpet extraction machine in the PRO series is known as the "STEAMEX PRO 10," and a fifteen gallon machine in the DELUXE series is known as the "STEAMEX DELUXE 15."

In 1982, U.S. Floor introduced an upgraded fifteen gallon machine and designated it the "STEAMEX DELUXE 15 XL." This model was similar to U.S. Floor's existing fifteen gallon unit but included an extra blower and a high pressure pump. According to U.S. Floor, the suffix "XL" was arbitrarily chosen to distinguish the upgraded model from the existing "STEAMEX DELUXE 15."

Oreck produces floor care equipment under the federally registered trademarks "XL" and "ORECK XL." Each of these marks has acquired incontestable status under 15 U.S.C. § 1065. Oreck's product line includes vacuum cleaners and rug shampooers but no extraction machines. Each year Oreck spends millions of dollars advertising its products under the XL mark

---

[*] District Judge of the Northern District of Illinois, sitting by designation.

in trade journals, general interest periodicals, and at trade fairs. U.S. Floor also advertised the STEAMEX DELUXE 15 XL, and in some instances it promoted its product in the same trade journals and at the same trade fairs as Oreck. Reproduced below are examples of a typical Oreck advertisement (Fig. 1) and an advertisement for the STEAMEX DELUXE 15 XL (Fig. 2).

Figure 2. (Except for differences in price terms, this is the only advertisements for the STEAMEX DELUXE 15 XL in the record).

Figure 1.

U.S. Floor began marketing the STEAMEX DELUXE 15 XL in October, 1982. On September 30, 1983, Oreck wrote to U.S. Floor and demanded that it cease using the XL mark. Although U.S. Floor's counsel took the position that no infringement had occurred because U.S. Floor was using XL as a model designation rather than as a trademark. U.S. Floor offered to phase out the use of XL by April 15, 1984. At first, U.S. Floor proposed to change its designation by adding an "S," making it the "STEAMEX DELUXE 15 XLS." Oreck rejected this proposal. By May 1, 1984, U.S. Floor had ceased using XL and was marketing its upgraded fifteen gallon model as the "STEAMEX DELUXE 15 X2." Nevertheless, Oreck filed this lawsuit on May 9, 1984, alleging trademark infringement, false designation of origin, and unfair competition.

The jury, concluding that U.S. Floor's use of "XL" was "likely to cause confusion, or to cause mistake, or to deceive," 15 U.S.C. § 1114(1), found for Oreck and awarded damages of $20,000. Subsequently, the district court denied U.S. Floor's motions for judgment n.o.v. and to dismiss for lack of personal jurisdiction, and also denied Oreck's motions for an injunction, increased damages, and attorney's fees. U.S. Floor appealed and Oreck cross-appealed.

## II.

■ U.S. Floor contends that it was not subject to personal jurisdiction in the district court under the Louisiana longarm statute. La.R.S. 13:3201. The statute provides in part that a court

> may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident: (1) Transacting any business in this state.... (3) Causing injury or damage by an offense or quasi-offense committed through an act or omission in this state.

Alternatively, U.S. Floor argues that it did not have the requisite "minimum contacts" with Louisiana to satisfy the due process clause. Due process requires that a defendant have such minimum contacts with the forum state that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ U.S. Floor makes much of the fact that no STEAMEX DELUXE 15 XL machine ever was sent into Louisiana. While one XL machine was billed to a distributor in Louisiana and shipped to a customer in Mississippi, U.S. Floor asserts that this is not the sort of purposeful or consistent business activity that would subject it to the jurisdiction of the Louisiana courts.

U.S. Floor misstates the issue, however. The fact is that U.S. Floor did considerably more than mail a single invoice into Louisiana. As the district court noted, U.S. Floor had at least two distributors in Louisiana who presumably received the price lists U.S. Floor sent to its distributors on a regular basis. These price lists, as shown in the record, included the STEAMEX DELUXE 15 XL. Moreover, U.S. Floor placed ads for the XL model in nationally-distributed trade magazines. From this evidence it is clear that U.S. Floor "sought to serve a national market" and "made no attempt to limit the states in which its product was marketed." *Vault Corp. v. Quaid Software, Ltd.*, 775 F.2d 638, 640 (5th Cir.1985).

Additionally, U.S. Floor engaged in substantial business activity in Louisiana that was not directly related to its promotion of the STEAMEX DELUXE 15 XL. The record shows that from March 1, 1983 through August 31, 1984, U.S. Floor billed its two Louisiana distributors and five other Louisiana customers for over $20,000 in sales. U.S. Floor also placed numerous ads for non-XL products in trade magazines distributed in Louisiana.

According to U.S. Floor, those of its business activities that were not directly related to use of the offending mark are not relevant for purposes of the Louisiana long-arm statute. We disagree. Though it is true that in some respects the long-arm statute is more restrictive than federal due process, requiring a showing of some connection between the business transacted in Louisiana and the cause of action, *Farnham v. Bristow Helicopters, Inc.*, 776 F.2d 535, 537 (5th Cir.1985), this is not a case in which the defendant's activities in the forum have no relationship to the plaintiff's claim. As indicated, U.S. Floor promoted the STEAMEX DELUXE 15 XL in Louisiana through its distributors and through nationally distributed trade journals. Moreover, the promotion and sales of U.S. Floor's other products in Louisiana was still the same sort of business conduct that gave rise to Oreck's trademark claims.

By contrast, *Farnham* and the Louisiana cases on which it relied all were suits against out-of-state defendants for personal injuries that in no sense related to the

defendants' Louisiana business activities. *See Farnham,* 776 F.2d 535 (wrongful death suit arising out of helicopter crash in Indonesia); *Robinson v. Vanguard Ins. Co.,* 468 So.2d 1360 (La.Ct.App. 1st Cir. 1985) (suits for property damage, wrongful death, and survival arising out of airplane crash in Mississippi); *Alba v. Riviere,* 457 So.2d 33 (La.Ct.App. 4th Cir.1984) (suit for personal injuries suffered in Belize). The same is true of a recent, post-*Farnham* Louisiana case, *Drago v. Home Ins. Co.,* 486 So.2d 940 (La.Ct.App. 1st Cir.1986) ("slip and fall" in Canada). Considering U.S. Floor's sales and promotional activities in Louisiana as a whole, we think it clear that jurisdiction was proper under the Louisiana long-arm statute.

U.S. Floor also had sufficient contacts with the state of Louisiana to satisfy the requirements of the due process clause. It purposefully entered the Louisiana marketplace and sought the benefits of doing business there. In fairness, it should have expected to be subject to the jurisdiction of the Louisiana courts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Accordingly, we conclude that the district court properly denied U.S. Floor's motion to dismiss for lack of personal jurisdiction.

### III.

The next question is whether the jury verdict is supported by the evidence. The verdict must be upheld "unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict." *Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 149 (5th Cir.1985). In other words, we must determine "whether the jury had before it any competent and substantial evidence that fairly supports the verdict." *Id.*

██ To prove its claim of trademark infringement, Oreck was required to show that U.S. Floor's use of the XL mark was likely to create confusion in the minds of potential buyers as to the source, affiliation, or sponsorship of the parties' prod-

ucts. 15 U.S.C. § 1114(1), *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980). The question of likelihood of confusion is decided by considering a variety of factors including: (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers. *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha,* 754 F.2d 591 (5th Cir.1985); *Sun-Fun Products v. Suntan Research & Development,* 656 F.2d 186 (5th Cir.1981). We consider each of these factors in turn and conclude that U.S. Floor's limited use of XL presented no likelihood of confusion.

██ 1. *Strength of Oreck's Mark.* The XL mark has several characteristics that weigh against affording it broad trademark protection. First, it is widely used on a variety of commercial goods, including cameras, computers, automobiles, audiotapes and chainsaws. This dilutes the strength of the mark and entitles it to a narrower range of protection. As this court observed in *Exxon Corp. v. Texas Motor Exchange,* 628 F.2d 500 (5th Cir. 1980), "The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion." *Id.* at 504 (quoting Restatement of Torts § 729, comment g (1938)); *see also Amstar Corp. v. Domino's Pizza,* 615 F.2d 252, 259–60 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

Second, though at first glance XL may appear arbitrary or fanciful, in actual usage the mark is suggestive of a number of possible meanings. Spoken, XL is a homonym for "excel," connoting excellence. Indeed, at trial Oreck's president testified that XL "stand[s] for excellence." XL is also commonly used on clothing or equipment to mean extra-large. In this particular case, the record shows that Oreck regu-

larly advertised its mark in connection with the words "extended life," descriptive language that further diluted the distinctiveness of the mark.

Oreck maintains that U.S. Floor may not attack the mark on grounds of descriptiveness, given the mark's incontestable status and the Supreme Court's holding in *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). *Park 'N Fly* merely held, however, that an infringement action brought by the holder of an incontestable mark may not be defended on the ground that the mark is merely descriptive and therefore invalid. *Id.* 105 S.Ct. at 667. U.S. Floor's argument was not that Oreck's mark was invalid, but that it was not *infringed* because there was no confusion. *Park 'N Fly* says nothing to preclude this argument. Incontestable status does not make a weak mark strong.

It is true that Oreck advertised its mark heavily and, on at least two occasions, prevented competitors from using it. Nevertheless, we conclude that the mark was not so evocative or unique as to deserve the broad measure of protection that would be required in order to prohibit U.S. Floor's limited use of it.

2. *Similarity of Design.* Viewed in isolation, the XL letters in each advertisement are obviously quite similar, though Oreck tends to use a more stylized design. *See* Figs. 1, 2. But the letters must not be viewed in isolation. Rather, we must "look at the competing marks in their entirety and not merely at individual similar features."

*Marathon Mfg. Co. v. Enerlite Products Corp.,* 767 F.2d 214, 219 (5th Cir.1985); *see also Security Center, Ltd. v. First National Security Centers,* 750 F.2d 1295, 1302 (5th Cir.1985).

While Oreck used the XL mark on all of its products, U.S. Floor used XL only on one product. Unlike Oreck, which frequently advertised the mark standing alone, U.S. Floor invariably used it in connection with the full name of the product— the STEAMEX DELUXE 15 XL. In its

advertisements, the word STEAMEX is in larger print than XL and is unquestionably the attention-getting feature. *See Armstrong Cork v. World Carpets, Inc.,* 597 F.2d 496, 502 (5th Cir.1979). The advertisement proclaims in a large-type, boldface headline "STEAMEX DELIVERS AGAIN!" and clearly indicates that U.S. Floor is the maker of the product. Thus, viewed properly in context, STEAMEX DELUXE 15 XL has only a slight similarity to Oreck's trademark and is unlikely to result in any confusion.

3. *Similarity of the Products.* The greater the similarity between Oreck's floor cleaning equipment and the STEAMEX DELUXE 15 XL, the greater the likelihood that potential purchasers would be confused. Oreck vacuum cleaners and rug shampooers are sold for both commercial and consumer uses. One of the features Oreck emphasizes in its advertisements is the lightweight quality of its products. Oreck's consumer model vacuum cleaners weigh as little as 8¾ pounds, while most of its commercial equipment weighs between 15 and 45 pounds. The heavier models are priced up to $645 wholesale and $1500 retail.

By contrast, the STEAMEX DELUXE 15 XL weighed about 150 pounds, was marketed to commercial and rental customers, and sold for about $2000 wholesale and $3500 to $4000 retail. Further, extraction machines like the STEAMEX models operate in a fundamentally different fashion from rug shampooers and vacuum cleaners. Extraction machines operate by injecting a cleaning solution into the carpet at high pressure and then pulling the fluid back into the machine. As Oreck's vice-president and general manager acknowledged at trial, Oreck produces no product that performs these functions in similar one-step fashion. To achieve the same result with Oreck equipment, one would have to first use a rug shampooer, then follow it up with a wet/dry vacuum.

Oreck recognized the functional dissimilarities between its equipment and extraction machines in a 1975 letter to the United

States Patent and Trademark Office. The letter was submitted in response to the Trademark Office's refusal to register Oreck's XL mark for electric rug shampooers due to a similar registration on Excelsior Craft, Inc.'s "XL Kleen" for extraction machines. In the letter, Oreck's counsel observed:

> The only item claimed by applicant which appears to be the basis for refusal of registration is "electric carpet shampooers". But these "shampooers" are portable electric appliances designed for use only in the household, and they are wholly unrelated to the heavy duty steam cleaning units which are the subject of the cited registration. That is, the latter are obviously large units designed for installation and use in cleaning establishments. Such units are a different type of product. They move through different channels of trade and they are sold to a different class of customers from those to whom applicant's goods are sold.

The Trademark Office subsequently vacated its earlier decision and issued Registration No. 1,028,501 to Oreck on December 30, 1975.

We find the arguments made by Oreck's counsel in the 1975 letter to be more persuasive than the arguments it presents today. Oreck nowhere disputes that Excelsior Craft's "XL Kleen" was a heavy duty extraction machine similar to the STEAMEX DELUXE 15 XL. It simply points out that in 1979 Excelsior Crafts agreed to abandon its use of the "XL Kleen" mark because of Oreck's prior use and superior rights. The fact that Oreck had superior rights in the mark does nothing to undermine our conclusion, however. We find that Oreck's counsel's representations, apparently accepted by the Trademark Office, carry significant probative value. They are consistent with other evidence in the record, bolstering the conclusion that the substantial dissimilarities between Oreck's products and the STEAMEX DELUXE 15 XL would reduce the likelihood of confusion in the minds of potential purchasers.

4. *Identity of Retail Outlets and Purchasers.* Oreck markets its products to hotel chains, hospitals, commercial installations, and ordinary consumers. U.S. Floor markets the STEAMEX DELUXE 15 XL to commercial buyers as well, but also markets it to the rental trade and the professional carpet cleaning trade. These latter two are significantly different from the customers Oreck targets. U.S. Floor's smaller steam cleaning units are used primarily by stores which rent to customers for home use, while its larger units, such as the STEAMEX DELUXE 15 XL, are used by professionals who come into homes or commercial establishments and clean rugs for a fee. Oreck sells its floor care equipment primarily to individuals and establishments that clean their own rugs and floors. Of about forty U.S. Floor distributors nationally and many more Oreck distributors, the two companies have only three in common.

Though there is some overlap between the markets for the parties' products, there is not the complete congruity that Oreck asserts. The testimony indicates that the market for floor cleaning equipment is neither homogeneous nor monolithic. As Oreck itself observed in its 1975 letter to the Trademark Office, Oreck's consumer models "move through different channels of trade [from heavy duty extraction machines] and . . . are sold to a different class of customers." The partial overlap of markets is not sufficient to raise a question of fact for the jury given Oreck's poor showing on the factors that are controlling in the context of this case.

5. *Similarity of Advertising Media Used.* In several instances, advertisements for the STEAMEX DELUXE 15 XL appeared in the same trade journals in which advertisements for Oreck's XL products appeared. In addition, the parties attended some of the same trade shows, and promoted their XL products there. Ordinarily, these facts would weigh in support of a finding of confusion. *Fuji Photo*, 754 F.2d at 598. In the circumstances of this case,

however, the similarity of the advertising media used is entitled to little weight.

Given the only slight resemblance of the marks to each other when viewed in context, the likelihood of confusion from the advertising is negligible. Many trademarks are advertised side-by-side in the same publications, but the public does not assume from this fact alone that the products have a common origin. The danger of confusion only arises when the trademarks are deceptively similar.

6. *Defendant's Intent.* Proof of the defendant's intent to benefit from the good reputation of the plaintiff's products is not required in order to establish infringement. If such an intent can be shown, however, it may provide compelling evidence of a likelihood of confusion. *Exxon,* 628 F.2d at 506 (5th Cir.1980). In this case, Oreck's theory is that U.S. Floor purposefully selected the XL mark in an attempt to "pass off" its products as those of Oreck. Oreck presents no direct evidence in support of its theory. Rather, it appears to rely solely on the assumption that U.S. Floor *must have* known about Oreck's XL mark, and that U.S. Floor therefore *must have* intended to trade upon the mark's value.

The record does not support this assumption. At trial, U.S. Floor presented evidence that it innocently adopted XL as a model designation to distinguish the STEAMEX DELUXE 15 XL from the STEAMEX DELUXE 15. Robert Weil, president of U.S. Floor, testified that he was unaware of Oreck's use of XL. U.S. Floor's actions speak louder than its words, however. In its advertisements, the company clearly identified itself as the maker of the STEAMEX DELUXE 15 XL. The advertisements' headlines proclaim "STEAMEX DELIVERS AGAIN!" in lettering that dwarfs the appearance of XL. The company used XL on only one of its products—one that differed substantially from Oreck's products—and it never used the mark independently. Faced with Oreck's charges of infringement, U.S. Floor promptly took steps to resolve the dispute and, failing that, to abandon its use of the offending symbol.

These are not the actions of an intentional infringer.

7. *Actual Confusion.* "Although evidence of actual confusion is not necessary to a finding of likelihood of confusion, it is nevertheless the best evidence of likelihood of confusion." *Amstar,* 615 F.2d at 263; *see Fuji Photo,* 754 F.2d at 597. At trial, Oreck produced no evidence of actual confusion. It never attempted to prove that anyone anywhere in the distribution chain for either of the parties' products was misled by U.S. Floor's use of the name STEAMEX DELUXE 15 XL. It put on no evidence of misplaced phone calls, misdirected mail, or other indicia of actual confusion.

In light of the concurrent use of the STEAMEX DELUXE 15 XL name and Oreck's XL mark for seventeen months, Oreck's inability to point to a single incident of actual confusion is highly significant. *Cf. Amstar,* 615 F.2d at 263 (where only three instances of actual confusion were found after nearly 15 years of concurrent sales, presumption was raised against likelihood of confusion in the future). Considering Oreck's weak showing on the other factors relevant to a likelihood of confusion, probably nothing short of a showing of actual confusion would be strong enough to swing the case in its favor. *Falcon Rice Mill v. Community Rice Mill,* 725 F.2d 336, 345 (5th Cir.1984).

8. *Degree of Care Exercised by Potential Purchasers.* At trial, U.S. Floor's vice-president of sales testified that the ultimate purchasers of U.S. Floor products are building service contractors, professional carpet cleaning services, and building maintenance managers; in short, "people who are directly responsible for carpet care." Because these persons are buying for professional and institutional purposes at a cost in the thousands of dollars, they are virtually certain to be informed, deliberative buyers. *Sun-Fun Products,* 656 F.2d at 191; *Armstrong Cork,* 597 F.2d at 504 n. 10. The same is true for purchasers of Oreck's big ticket items. Though purchasers of Oreck's consumer models are likely to be less deliberative, they are un-

**174**

likely to be exposed to or interested in the STEAMEX DELUXE 15 XL. This is not the sort of purchasing environment in which confusion flourishes.

*Conclusion*

Though we are reluctant to disturb a jury verdict, we conclude that in this case the evidence fairly cnsidered points to only one conclusion: a finding of no infringement. In making this determination, we give particular weight to the absence of any evidence of actual confusion, the weakness of the plaintiff's mark, and the lack of similarity between the marks when viewed in context. However, none of the factors relevant to a likelihood of confusion weigh in Oreck's favor. We also note that there was no evidence of damage to Oreck's reputation or unjust enrichment on the part of U.S. Floor. On such a record, we cannot permit a finding of infringement to stand.

Reversed.