**BLUE BELL BIO–MEDICAL,**
Plaintiff–Appellant,

v.

**CIN–BAD, INC., d/b/a CBi Medical, Inc., Robert A. Bishop, II and Ray Melander, Jr., Defendants–Appellees.**

No. 88–1710.

United States Court of Appeals,
Fifth Circuit.

Feb. 10, 1989.

Retta A. Miller, Dennis N. Ryan, Gerald C. Conley, Jackson & Miller Law Firm, Dallas, Tex., for plaintiff-appellant.

Charles B. Robinson, Clyde Siebman, Sherman, Tex., for defendants-appellees.

Before KING, WILLIAMS and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant Blue Bell Bio–Medical appeals from the district court's refusal to grant a preliminary injunction in its trade dress infringement and unfair competition claims. We find that the district court applied the proper legal analysis and that its factual findings are not clearly erroneous. The court did not abuse its discretion in denying the preliminary injunction. We therefore affirm.

## I. *Background*

Appellant Blue Bell Bio–Medical (Blue Bell) sells medical carts which are used in hospital anesthesia areas and operating rooms. The carts are "Blue Bell" (regal) blue with an off-white molded plastic top and off-white accessories. Blue Bell medical carts may be customized by adding top rails, side rails, equipment shelves, dividers, and other attachments. Blue Bell's market strategy revolves around the "Blue Bell" name and color.[1]

Appellee Robert Bishop is the president and chief executive officer of appellee CBi Medical, Inc. (CBi). Appellee Ray Melander, Jr. is the sales manager and vice president of CBi. Melander became Blue Bell's independent representative in Texas in November, 1984. In June of 1986, Melander joined CBi, and requested that CBi be granted permission to distribute Blue Bell medical carts. CBi became Blue Bell's Texas distributor in September, 1986. Prior to its Blue Bell distributorship, CBi sold medical supplies but did not market a line of medical carts.

In June, 1987, Blue Bell terminated its distributorship agreement with CBi. Blue

---

1. Blue Bell Bio–Medical is a corporation headquartered in Blue Bell, Pennsylvania. Its logo is a blue bell, and its medical carts are and have always been Blue Bell blue. The company's telephone number is 1–800–BLUE–BELL.

Bell was not satisfied with CBi's sales figures, and contended that CBi was less than vigorous in marketing Blue Bell's products.

Shortly thereafter, CBi began to develop its own line of medical carts under the name "Top Drawer." Stack–On Products is the manufacturer of CBi's Top Drawer carts. Stack–On purchased Blue Bell Medical carts and used Blue Bell brochures and pricing schemes in the design and development of the CBi cart. Stack–On's president, James Lynn, testified, however, that CBi never singled out Blue Bell's cart to copy. Lynn also testified that he looked at medical carts made by other manufacturers while designing the CBi cart.

CBi specified that it wanted a blue medical cart. According to Lynn, it was Stack–On, the manufacturer, who chose the color regal blue from its regular paint inventory for use on CBi's Top Drawer cart. Thus, the CBi cart is a very similar, if not identical, color to Blue Bell's cart. The CBi Top Drawer cart also has a similar overall color scheme. The top is light gray molded plastic, and the attachments are light gray, white, and off-white. Like the Blue Bell cart, the CBi cart can be customized by adding various accessories.

The CBi cart also has similar dimensions to the Blue Bell medical cart. CBi introduced evidence which suggests, however, that there is not much variation in the size and design of medical carts throughout the entire market.[2]

Blue Bell argues that the CBi cart is virtually indistinguishable from its own cart. CBi contends that its Top Drawer cart is different from Blue Bell's product in each of the following respects: (1) CBi's cart has a gray plastic top instead of an off-white plastic top; (2) CBi's paint has a dull finish instead of a shiny finish; (3)

CBi's cart is a slightly darker shade of blue; (4) CBi's cart has a different finish on the handles; (5) CBi's cart has a smooth back panel instead of a corrugated back panel; and (6) CBi's cart has a conspicious "Top Drawer" label on the top left corner and a separate label on the bottom right depicting the CBi Medical, Inc. logo in conjunction with the Stack–On name.

The record suggests one instance where CBi had attempted to "pass off" its Top Drawer cart as a Blue Bell medical cart. After Blue Bell had terminated CBi's distributorship agreement, appellee Melander contacted the Anesthesia Department at the Children's Medical Center in Dallas. Melander inquired about supplying "more carts" to the hospital. Melander had previously provided Blue Bell medical carts to Children's Medical Center. Ms. Beverly Jones, Melander's contact at Children's Medical Center, testified that Melander never informed Children's that he was no longer a distributor of Blue Bell carts.

Children's decided to purchase additional carts from Melander, and each document for the purchase specified that *Blue Bell* carts were needed. Melander submitted a proposal for the cart purchase which did not specify that Blue Bell carts would be provided, but did use Blue Bell's catalog numbers to identify the types of carts and accessories to be delivered.

Melander delivered CBi's Top Drawer carts to Children's, again without notification that the carts were not Blue Bell carts. Jones testified that from the back the carts looked identical. When she examined the front, however, she noticed the Top Drawer label and immediately determined that these were not the Blue Bell carts ordered. After field testing, Children's rejected

2. The district court had before it color sales brochures or advertisements from the following companies: Appellant Blue Bell; Appellee CBi; Waterloo Industries, Inc. (a company which manufactures the Blue Bell carts and also markets its own line of competing products); Homak Manufacturing Co.; Harloff Manufacturing Co.; and LASE, Inc. (the distributor of a specialized laser surgery cart which is produced by Blue Bell and is also "Blue Bell" blue). The carts from the other companies are similar in size and design to the Blue Bell and CBi products. The record indicates that the four, five, and six drawer configuration of the Blue Bell medical carts are used throughout the industry. In addition, some carts by other manufacturers have similar rails, shelves, and bumpers, and some of the same accessories. Like Blue Bell, several companies make carts with a contrasting (often light-colored) molded plastic top. In short, many features of the Blue Bell cart also appear on competing products.

CBi's Top Drawer carts because they concluded that the carts were of inferior quality. Children's then ordered Blue Bell carts from the company that had become Blue Bell's Texas distributor.

On May 23, 1988, Blue Bell filed a complaint in federal district court alleging that CBi violated § 43(a) of the Lanham Act[3] and the Texas law of unfair competition. Blue Bell sought to enjoin CBi from marketing a medical cart which is confusingly similar to Blue Bell's cart and to prevent CBi from misleading Blue Bell's customers. At issue on appeal is the district court's refusal to grant a preliminary injunction in favor of Blue Bell. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) (1982).

## II. *Standard of Review*

■ The denial of a preliminary injunction is left to the discretion of the district court, and will be disturbed only upon an abuse of that discretion. *City of Meridian, Mississippi v. Algernon Blair, Inc.,* 721 F.2d 525, 527 (5th Cir.1983). A denial on the basis of erroneous legal principles, however, is reviewed *de novo. Federal Trade Comm'n v. Southwest Sunsites, Inc.,* 665 F.2d 711, 717 (5th Cir.), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 846 (1982).

A party is entitled to a preliminary injunction only after proving four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause the opponent; and (4) that the injunction will not disserve the public interest. *Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc.,* 600 F.2d 1184, 1187 (5th Cir.1979). These elements are mixed questions of law and fact. In reviewing the actions of the district court for abuse of discretion, we uphold the district court's findings of fact unless clearly erroneous. Fed.R.Civ.P. 52(a); *Apple Barrel Productions, Inc. v. Beard,* 730 F.2d 384, 386 (5th Cir.1984).

## III. *The Trade Dress Infringement Claim*

■ The Lanham Act creates a cause of action for trade dress infringement. This action is analogous to the common law tort of unfair competition. *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 659 F.2d 695, 700–702 (5th Cir.1981), *cert. denied,* 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982); *Sun–Fun Products, Inc. v. Suntan Research & Development,* 656 F.2d 186, 192 (5th Cir. Unit B Sept. 1981). The "trade dress" of a product is essentially its total image and overall appearance. *Falcon Rice Mill v. Community Rice Mill,* 725 F.2d 336, 337 n. 1. (5th Cir.1984). In general, the Act prohibits a manufacturer from "passing off" his goods or services as those of another maker by virtue of substantial similarity between the products. *Chevron,* 659 F.2d at 701 (quoting *Boston Professional Hockey Ass'n. v. Dallas Cap & Emblem Mfg. Co.,* 510 F.2d 1004, 1010 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975)).

■ A court must undertake a two-step analysis to resolve a trade dress infringement claim under the Lanham Act. The first question is whether the product's trade dress qualifies for protection. This inquiry encompasses three issues: (1) distinctiveness, (2) secondary meaning, and (3) functionality. Second, if the trade dress is protected, the court must then determine whether the trade dress has been infringed. Infringement occurs only when there is a likelihood of confusion between the products of the plaintiff and the defendant. *See Sno–Wizard Mfg. v. Eisemann Products Co.,* 791 F.2d 423, 425–26 (5th Cir.

---

**3.** Section 43(a) of the Lanham Act provides:
Any person who shall ... use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
15 U.S.C. § 1125(a) (1982).

1986); *Sicilia Di R. Biebow & Co. v. Cox,* 732 F.2d 417, 425 (5th Cir.1984).

The district court applied this analysis to Blue Bell's trade dress infringement claim. First, the court concluded that Blue Bell had not established that its medical cart was distinctive. The court also determined that Blue Bell had failed to show that its product's features had acquired a secondary meaning. Thus, the court found that Blue Bell's trade dress was not protected under the Act. Alternatively, the court determined that even if the Blue Bell cart was entitled to protection, Blue Bell had failed to prove that there was a likelihood of confusion between the two products. The district court therefore concluded that Blue Bell did not meet its burden of establishing a substantial likelihood of success on the merits, and denied the preliminary injunction on this ground.[4]

Blue Bell challenges the district court's decision in two respects. First, Blue Bell argues that the lower court erred in its legal analysis, requiring this Court to dispense with its usual rule of deference and conduct a *de novo* review. Second, Blue Bell contends that the factual findings which underlie the district court's denial of a preliminary injunction are clearly erroneous. We address these contentions in turn.

## A. The court's legal analysis

Although the district court followed the two-step trade dress infringement inquiry noted above, Blue Bell nevertheless contends that the lower court made significant legal errors in analyzing its claim. Specifically, Blue Bell argues that the court: (1) ignored the parties' prior relationship, and (2) disregarded CBi's intent to copy the Blue Bell product.

### 1. *Prior Relationship*

■ Blue Bell argues that the court employed an erroneous legal analysis because it failed to consider the prior relationship between the parties. The court expressly recognized that CBi was a former distributor of Blue Bell carts. Blue Bell contends, however, that the court failed to address the legal consequences of that relationship. According to Blue Bell, a former distributor always has an affirmative duty to distinguish its goods from those of its prior licensor. Blue Bell argues that CBi has breached this duty by painting its carts regal blue.

This Court has recognized the prior relationship between the parties is a relevant factor in a trade dress infringement claim. Indeed, we have consistently found that a previous licensing or distributorship agreement may provide evidence of a defendant's intent to copy the plaintiff's goods.[5] *Sicilia Di R. Biebow,* 732 F.2d at 432; *Falcon Rice Mill,* 725 F.2d at 345 n. 9. Contrary to Blue Bell's assertion, however, this Circuit has never held that a former distributor always has a greater duty than others in the market to distinguish its product from that of its prior manufacturer.

In support of its argument that such a duty does exist, Blue Bell relies on our decision in *Professional Golfers Ass'n v. Bankers Life & Casualty Co.,* 514 F.2d 665 (5th Cir.1975). In that case, the Bankers Life & Casualty Company and the PGA jointly developed and operated a clubhouse and golf course. Bankers was licensed to use the PGA's registered trademark. After the relationship between the parties ended, Bankers continued to use the PGA name and logo without permission, even changing the name of the facility to "The PGA Country Club." Under these circumstances, the court properly concluded that "[a] former licensee cannot mislead the public into believing that its affiliation continues once the licensing arrangement has ceased." 514 F.2d at 670. Similarly, in other cases where a former licensee continues to use a registered mark of its licensor

---

**4.** The court made its decision on the basis of affidavits, deposition testimony, and documentary evidence, without a live hearing.

**5.** As discussed in Section III. A. 2. of the opinion, *infra,* the defendant's intent to copy may, in turn, be considered as one factor which weighs in favor of finding a likelihood of confusion between the products of the plaintiff and the defendant.

without permission, the courts have ordered the defendant to discontinue this misleading practice and take affirmative steps to distinguish its product. *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491–93 (11th Cir.1983), *cert. denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *Holiday Inns, Inc. v. Alberding,* 203 U.S.P.Q. (BNA) 273 (N.D.Tex.1978), *aff'd,* 683 F.2d 931 (5th Cir.1982).

In contrast, in those trade dress infringement cases where a defendant does not continue to use a registered mark without permission, as is the case before us, there is no broad requirement that a former distributor must always take affirmative steps to distinguish its product. *See Sicilia Di R. Biebow,* 732 F.2d at 423 and 432 (the Court noted that the defendant was a former distributor of the plaintiff, but did not infer any legal duty from this fact). Indeed, when this position was explicitly argued by a plaintiff, we declined to recognize a general duty of every prior distributor to stay "well clear" of the trade dress of its former supplier. *Falcon Rice Mill,* 725 F.2d at 346–47.

In the present case, CBi has not appropriated Blue Bell's registered trademark for use on its own carts. Indeed, CBi has prominently labeled its Top Drawer carts with the CBi registered trademark and the Top Drawer name. Under these circumstances, we find that the district court did not err in failing to hold that CBi had a special duty to distinguish its product from Blue Bell's.

### 2. *Intent*

As a second ground of legal error, Blue Bell claims that the district court impermissibly ignored evidence of CBi's intent to copy Blue Bell's medical carts. According to Blue Bell, by failing to consider intent expressly, the district court engaged in an erroneous legal analysis which requires this Court to conduct a *de novo* review.[6]

There was conflicting deposition testimony regarding CBi's intent to copy Blue

Bell's product. Blue Bell relied on statements of its own employees and distributors, who testified that appellee Melander informed them that CBi copied the Blue Bell cart to "get back" at Blue Bell for terminating their distributorship. CBi denied this allegation. Blue Bell also pointed to testimony that CBi made specific comparisons to Blue Bell's product when designing the CBi medical cart. At the same time, the manufacturer of CBi's medical carts testified that CBi never instructed it to copy the Blue Bell product. According to the manufacturer, while CBi indicated that it wanted a blue medical cart, he chose the color regal blue from his own paint inventory without specific direction.

Apart from the conflicting testimony on both sides, there also was independent record evidence of CBi's intent to derive benefit from Blue Bell's reputation. As previously noted, the prior relationship between the parties could support a finding of intent to copy. Moreover, "intent to deceive or to profit from confusion may be inferred from the acts of the infringer." *Falcon Rice Mill,* 725 F.2d at 346. The incident at Children's Medical Center, especially Ray Melander's failure to inform the hospital he no longer sold Blue Bell carts despite their clear request for Blue Bell models, strongly suggests impure motives on the part of the appellees at least in that instance.

■■■■ Blue Bell's argument is that the lower court's failure to make an explicit finding regarding intent is an error of law requiring *de novo* review. This contention rests on the assumption that intent alone can establish trade dress infringement. But this is not the law. The Lanham Act and the law of unfair competition "[do] not exist to punish evil motives." Instead, "the focus ... is to prevent deception of customers." 2 McCarthy, *Trademarks and Unfair Competition* § 23:35 at 156 (2nd ed. 1984) (McCarthy). Thus, "the basic test under every type of 'unfair compe-

---

**6.** Blue Bell also contends that the evidence of CBi's intent to copy establishes that the court's factual finding of no likelihood of confusion is

clearly erroneous. This issue is addressed Section III.B. of the opinion.

tition' is the 'likelihood of confusion' test." *Chevron,* 659 F.2d at 703.

■ A defendant's intent to copy is a relevant factor which a court may consider when deciding whether there is a likelihood of confusion between the products of the plaintiff and the defendant. *Sno–Wizard,* 791 F.2d at 428; *Sun–Fun Products,* 656 F.2d at 190. We have stated that if a trademark or trade dress "was adopted [by the ·defendant] with the intent of deriving benefit from the reputation of [the plaintiff,] that fact alone may be sufficient to justify the *inference* that there is confusing similarity [between the products]." *Chevron,* 659 F.2d at 704 (emphasis added) (quoting *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 263 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)). But we must remember that the intent of the defendant is just one element in the likelihood of confusion inquiry.[7]

Likelihood of confusion is ·a question of fact. *Falcon Rice Mill,* 725 F.2d at 344. Thus, the proper weighing of the relevant factors is in the province of the district court. *AmBrit, Inc. v. Kraft, Inc.,* 812 F.2d 1531, 1538 (11th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987); *Falcon Rice Mill,* 725 F.2d at 345 n. 9. "An appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court 'might give facts another construction, resolve ambiguities differently, and find a more sinister cast to actions which the District Court apparently deemed innocent.'" *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 857–58, 102 S.Ct. 2182, 2190, 72 L.Ed.2d 606 (1982) (quoting *United States v. Nat'l Ass'n of Real Estate Boards,* 339 U.S. 485, 495, 70 S.Ct. 711, 717, 94 L.Ed. 1007 (1950)).

Applying this principle to the case at hand, we conclude that the district court's failure to make an explicit finding regarding CBi's intent does not mean that the court misapplied the law. This is not a case where the court completely disregarded the proper legal analysis. *Cf. Wesco Mfg. v. Tropical Attractions of Palm Beach, Inc.,* 833 F.2d 1484, 1489 (11th Cir. 1987). Instead, as discussed below, the court adopted the correct "digits of confusion" test and made explicit findings regarding those factors which we can assume it felt were critical. We therefore have a sufficient basis for reviewing the district court's decision, and "we may affirm an ultimate finding on the issue of confusion that is not clearly erroneous, even when the district court fails to consider [each and every] factor." *Id.*

### B. The court's factual finding: no likelihood of confusion

Appropriately, then, we turn to the question of whether the court's weighing of the evidence and its ultimate factual conclusions are clearly erroneous. The district court concluded that Blue Bell's medical cart was not distinctive and had not acquired a secondary meaning, and therefore the cart was not entitled to protection from trade dress infringement. Alternatively, the court concluded that even if Blue Bell's cart qualified for protection, Blue Bell had failed to establish a likelihood of confusion between the two products. Thus, the court denied the preliminary injunction on the ground that Blue Bell did not establish a substantial likelihood that it would prevail on the merits.

■ Because likelihood of confusion is the essential element of Blue Bell's federal and state law unfair competition claims, we focus on this aspect of the district court's

---

7. In determining the likelihood of consumer confusion, a district court weighs a variety of factors, including:

similarity of products, identity of retail outlets and purchasers, identity of advertising media, type (i.e., strength) of trademark or trade dress, defendant's intent, similarity of design, and actual confusion. In addition,

it is often appropriate to consider the degree of care exercised by purchasers: confusion is more likely, for example, if the products in question are 'impulse' items or are inexpensive.

*Sno–Wizard,* 791 F.2d at 428 (citations omitted). *See infra* Section III. B.

opinion.[8] Likelihood of confusion is a question of fact, and the trial court's determination may be reversed only if clearly erroneous. *Falcon Rice Mill*, 725 F.2d at 344.

■ Blue Bell need not prove an incident of actual confusion between the products to obtain equitable relief. *Chevron*, 659 F.2d at 704. Blue Bell must show, however, that confusion is probable; a mere possibility that some customers might mistakenly identify the CBi cart as a Blue Bell product is not sufficient. 2 McCarthy § 23:1 at 45–46. The likelihood of consumer confusion is determined by looking at a variety of factors, or "digits," of confusion, including:

> similarity of products, identity of retail outlets and purchasers, identity of advertising media, type (i.e., strength) of trademark or trade dress, defendant's intent, similarlity of design, and actual confusion. In addition, it is often appropriate to consider the degree of care exercised by purchasers: confusion is more likely, for example, if the products in question are 'impulse' items or are inexpensive.

*Sno–Wizard*, 791 F.2d at 428 (citations omitted).

The district court employed this digits of confusion analysis. The court focused on three critical factors in finding no likelihood of confusion between the Blue Bell and CBi products. First, the court noted that a medical cart is a major piece of equipment bought by medical professionals who are likely to exercise a high degree of care in purchasing them. The court also found that the potential for confusion was greatly reduced because CBi's trademark and the Top Drawer name were prominently displayed on its cart. Finally, the court concluded that Blue Bell's assertion that the Children's Medical Center incident established actual confusion "deserves little weight" because the purchaser quickly determined that the CBi carts were not the Blue Bell carts ordered.

After reviewing the record, we accept the district court's finding of no likelihood of confusion as not clearly erroneous. The record indicates that the care with which hospitals purchase medical carts, including field testing of any unfamiliar product, makes it unlikely that a facility might inadvertently pick up a brand they did not mean to purchase. *Cf. Sicilia Di R. Biebow*, 732 F.2d at 433 (inexpensive four-ounce bottles of lemon and lime juice in very similar containers were often "jumbled" together in a produce bin). In addition, the prominent labels on both carts do much to dispel any potential confusion. Indeed, we have found that "in the case of a relatively high-priced, single purchase article ... there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed." *Sno–Wizard*, 791 F.2d at 429 (quoting *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir.1980)). Finally, the testimony of Blue Bell's own key witness supports the court's conclusion that there is no likelihood of confusion between the Blue Bell and CBi medical carts.[9]

---

8. We need not address Blue Bell's argument that the district court erred in finding that its trade dress was not protected. Blue Bell contends that the court failed to consider the "total image" of its medical cart, instead erroneously focusing solely on color, when the court determined that the Blue Bell cart was *not distinctive*. Blue Bell also claims that the court erred in finding that the Blue Bell trade dress had not acquired secondary meaning. Even if we considered these issues and found the district court clearly erroneous on each point, Blue Bell would still have to prove a likelihood of confusion to establish that it is likely to prevail on its trade dress infringement claim. *Sno–Wizard*, 791 F.2d at 425. Blue Bell must also establish that confusion is likely under the Texas law of unfair competition. *See infra* Section IV.

9. Ms. Beverly Jones, CBi's contact at Children's Medical Center, was deposed as a witness for Blue Bell. She was present when the CBi carts were delivered to the hospital. Ms. Jones testified that from the back the CBi cart looked like a Blue Bell cart. She stated, however, that she could immediately discern that the cart was not a Blue Bell cart when she looked at the front because it bore a prominent Top Drawer label. Ms. Jones also testified that this difference could be noted from several feet away.

We accepted a trial court's determination of no likelihood of confusion in light of very similar testimony in the *Sno–Wizard* case. There, a witness for the plaintiff admitted that the labeling of the defendant's machine had clearly distinguished it from the plaintiff's product, stating "I saw that after looking at [the label] on the

In summary, we have carefully reviewed the entire record, and are not convinced that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We therefore uphold the conclusion of the district court that there is no likelihood of confusion between the CBi and Blue Bell medical carts.

## IV. *Unfair Competition Under State Law*

Blue Bell's final claim need not detain us long. Blue Bell contends that the district court erred in failing to consider its unfair competition claim under Texas law. It is true that the lower court did not explicitly discuss this ground for recovery.

An essential element to establish unfair competition under Texas law is a likelihood of confusion between the product of the plaintiff and that of the defendant. *Miller v. Lone Star Tavern, Inc.*, 593 S.W.2d 341, 344 (Tex.Civ.App.—Waco 1979, no writ). A ruling on the likelihood of confusion under the Lanham Act also controls an unfair competition claim under state law. *Sno-Wizard*, 791 F.2d at 430 (applying Louisiana law); *Chevron*, 659 F.2d at 706 (applying Texas law). Thus, the district court's failure to consider independently the state law claim does not require reversal. Its finding of no likelihood of confusion disposes of this issue.

## V. *Conclusion*

Blue Bell's strongest argument, that the record clearly indicates CBi's intent to copy the Blue Bell product and derive benefit from Blue Bell's reputation, is not a sufficient ground for reversal. Intent alone cannot establish a trade dress violation; Blue Bell must also prove a likelihood of confusion between the products. In resolving a very similar trade dress infringement claim, this Court concluded that:

> At most [the plaintiff] has established that a former employee has gone into competition against his former employer and has appropriated certain elements of [the plaintiff's] trade dress in an effort

door that it was not a Sno-Wizard machine." 791 F.2d at 429.

to improve his competitive position. As long as consumers are not deceived or confused, however, this is not tortious unfair competition.

*Falcon Rice Mill*, 725 F.2d at 348. The same holds true for Blue Bell.

The district court employed the proper legal analysis and reached factual conclusions that are not clearly erroneous. We conclude that the court did not abuse its discretion in denying Blue Bell's request for a preliminary injunction. We therefore affirm.

AFFIRMED.