**MINTURN ADVERTISING,
INC., Plaintiff,**

v.

**HERMSEN DESIGN ASSOCIATES,
INC., Defendant.**

**Civ. A. No. CA3–87–2606–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 5, 1990.

David Judson of Hughes & Luce, Dallas, Tex., for plaintiff.

Richard L. Schwartz of Glaser, Griggs & Schwartz, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

FITZWATER, District Judge.

This lawsuit raises only one issue—whether the service mark adopted by defendant Hermsen Design Associates, Inc. ("Hermsen") is so similar to the mark adopted by plaintiff Minturn Advertising, Inc. ("Minturn") as to cause confusion in the minds of prospective customers. Because the court concludes the marks are not so similar that potential customers are likely to be confused, the court denies the permanent injunction Minturn requests.

1. The court sets forth in this memorandum opinion its findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52(a).

I

This is a trial on stipulated facts and affidavit evidence. By an agreed order dated May 11, 1989, Minturn and Hermsen stipulated that the only triable issue in this case related to Minturn's claim of infringement and Hermsen's claim of non-infringement. The parties agreed to stipulate to the underlying historical facts and submitted their remaining evidence by affidavit. From the stipulation and affidavits, the court finds the facts to be as follows.[1]

Minturn is an advertising agency with its principal place of business in Kansas. Minturn has provided advertising agency services since approximately 1983. It initially operated in Missouri, Nebraska, Iowa, and Oklahoma but began promoting its services in other parts of the United States, including Texas, in 1985. Hermsen is a corporation engaged in package design with its principal place of business in Texas. It has provided these services since late 1981. Hermsen promotes its services primarily in Texas.

In 1982 Hermsen designed, adopted, and began using a mark, consisting of the letter "H" formed by alternating dark and light horizontal and vertical bars, to promote its package design services. In 1984 it updated the mark by changing its form from a printed mark to an embossed mark. In May 1984 Hermsen began efforts to modernize its mark and in May 1985 redesigned its mark. The new mark consisted of wide heavy dark vertical bars of even width alternating with thin light bars superimposed upon a Uniform Product Code ("UPC") symbol with Hermsen's telephone number below.[2] Hermsen first used this mark to promote its services in November 1986.

2.

```
0  2 1 4  2 3 3  5 0 9 0
```

**432**

In 1985 Minturn began using a mark consisting of the letter "M" composed of alternating dark and light bars of varying widths superimposed upon a UPC symbol background with the name "Minturn" in bold caps below the UPC symbol and the words "Advertising Incorporated" in small caps below that.[3] The mark is used to promote Minturn's advertising agency services including soliciting, producing and placing television advertising, providing marketing services, and producing graphic designs and package designs for consumer products. Minturn applied for service mark registration on May 9, 1985 and obtained registration December 3, 1985. Minturn has used its mark continuously since its adoption.

Hermsen adopted its mark without actual knowledge of Minturn's use of its mark or the registration of Minturn's mark. Minturn and Hermsen both provide package design services directly to their customers, although package design is a much more substantial part of Hermsen's business than Minturn's business. Although both solicit their customers by mailings to specifically known customers, the formats of their solicitation materials vary.

## II

■ The parties agree that, to prevail on its claims, Minturn must demonstrate there is a likelihood of confusion between the marks each of the parties has adopted. The factors relevant to the inquiry are the strength of the mark, the similarity of the marks, the similarity of the services provided under the marks, the similarity of how the services are offered, the similarity of customers, the similarity of advertising and promotional media used, the degree of customer care used in selecting a service pro-

vider, whether the defendant intended to adopt an infringing mark, and whether actual confusion has occurred. *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir.1986), *cert. denied*, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The court considers each of these factors in turn and concludes Hermsen's use of its mark presents no likelihood of confusion.

### A

The court determines first whether Minturn's trademark is a strong or weak mark. The strength and distinctiveness of the mark adopted is a key consideration in deciding how much protection should be afforded to the mark. *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir.), *cert. denied*, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980).

■ The greatest protection extends to marks that are purely arbitrary or fanciful and bear no relation to the products or services sold under the mark. *Id.* The marks "Kodak" and "Xerox" are such marks. *Id.* A suggestive mark, as the term implies, suggests characteristics of the product or service offered but does not actually describe the product or service. *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1184 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). A suggestive mark is entitled to a narrower range of protection than an arbitrary mark. *Oreck*, 803 F.2d at 170.

■ Minturn contends its mark is arbitrary. The court disagrees. A UPC symbol appears on virtually all products sold to consumers at grocery stores. It is a familiar component of product packaging to consumers. Both parties attempt to market services related to designing consumer packaging. Thus, the incorporation of a

3.

UPC symbol in their marks suggests a service that each company seeks to provide. The mark therefore is not entitled to the broadest scope of protection.

Second, the evidence shows that at least ten registered trademarks include UPC symbols and a number of organizations incorporate UPC symbols in their advertising to suggest the advertiser's connection with the advertising or marketing of consumer goods or association with UPC scanning technology. Extensive third party use "dilutes the strength of the mark and entitles it to a narrower range of protection." *Oreck*, 803 F.2d at 170. Minturn faults Hermsen for failing to show that the registered marks and other uses including UPC symbols are used to market package design services and are recognized by consumers. The Fifth Circuit has rejected such a requirement. It is unnecessary to show that the products using similar marks are leading brands or are used to market products related to the product at issue. *Amstar*, 615 F.2d at 259. In fact, use of "more or less similar trade-marks ... on different goods" shows a decreased likelihood of confusion. *Id.* at 259–60. Although Minturn contends the marks Hermsen points to do not appear to be even remotely similar to the Minturn and Hermsen marks, the court disagrees with Minturn.

The numerous third party uses also suggest that granting a high level of protection to Minturn's mark would interfere with competition. *Cf. Security Ctr. Ltd. v. First Nat'l Sec. Ctr.*, 750 F.2d 1295, 1300 (5th Cir.1985). A court should not give a high level of protection to marks that are to some degree communicative because doing so hampers competitors in their ability best to promote their product or service. For all of the reasons stated above, the court concludes that Minturn's mark cannot be accorded a high degree of protection.

### B

■ The court next turns to similarity of design. In determining whether the design of a mark is similar, the court must examine the marks in their entirety rather than comparing only similar features. *Oreck*, 803 F.2d at 171, *see also Exxon Corp. v. Texas Motor Exchange*, 628 F.2d 500, 504 (5th Cir.1980); *Amstar*, 615 F.2d at 260–61. The test is essentially an eyeball test. *Exxon*, 628 F.2d at 504 (citing 2 J. McCarthy, *Trademarks and Unfair Competition* § 237:7 (1973)). While the court agrees that a comprehensive verbal analysis can add little to a verbal description of the dissimilarities of a mark, *Daimler–Benz Aktiengesellschaft v. Chrysler Corp.*, 169 U.S.P.Q. (BNA) 686, 688 (T.T.A.B.1971), the possibility of appellate review compels the court to attempt to describe the features of each mark that it finds prominent.

■ Each mark consists primarily of a letter on a UPC symbol background. While one of the key distinguishing features of both marks is the UPC symbol background, focusing excessively on that feature alone violates the prohibition against dissecting the marks rather than examining the overall impression that each makes. Another dominant feature of each mark is the letter used. The letter Minturn uses is quite clearly an "M" while the letter Hermsen uses is clearly an "H." Minturn argues that both letters have a similar appearance because "each letter has vertical sides and a cross member between such sides." Any person familiar with the alphabet, however, can easily distinguish the letter "M" from the letter "H"—regardless of the background the letters are placed upon.

Moreover, the style of the letter superimposed on the UPC symbol is quite different. Minturn's "M" consists of dark lines of varying width and is not integrated into the UPC background. Hermsen's "H" consists of dark lines of equal width integrated into the UPC background. While the court recognizes that other courts have concluded that a mark can be infringed even when the infringer does not use the same letters, those courts reached that conclusion because the style of the lettering was substantially the same. *See, e.g., WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084, 1085–86 (6th Cir.1983) ("Music City USA" in-

fringed "Opryland USA" where similar lettering was used); *Coca–Cola Co. v. Gemini Rising, Inc.*, 346 F.Supp. 1183, 1188–89 (E.D.N.Y.1972) (court enjoined defendant from selling a poster consisting of an exact reproduction of the "Coca-Cola" trademark and distinctive script letters substituting "Cocaine" for "Coca–Cola"); *Consolidated Freightways, Inc. v. Central Transport, Inc.*, 201 U.S.P.Q. (BNA) 524, 529 (E.D. Mich.1978) (virtually identical script used to form letters "CT" and "CF" and placement of letters in such a way as to obscure the differences between the "F" and the "T" justified injunctive relief). In this case, by contrast, the style of the letters is different and the letters themselves are different, thus making it difficult to argue that the marks make the same impression.

Finally, the court considers the other elements of the mark. *See Amstar*, 615 F.2d at 261 (" 'Domino' in possessive form next to the word 'pizza' produces a commercial impression quite different from the same mark placed next to 'sugar' "); *Oreck*, 803 F.2d at 171 (advertisement of one maker invariably used the letters "XL" with the full product name while other maker often used "XL" standing alone thus obviating confusion). In this context the appearance of Minturn's name below the "M"–UPC symbol creates a different impression than Hermsen's "H"–UPC symbol which always appears with the phrase "Hermsen Design Association, Inc." somewhere on the same document. Both parties thus identify themselves completely, decreasing the likelihood of confusion. Viewed in its totality, the Minturn mark is quite different from the Hermsen mark and is unlikely to cause confusion.

### C

■ The court next considers similarity of products, customers, and manner of offering the services jointly. Where the services provided by one mark user are similar to those provided by the other, there is a greater danger of confusion.

*Oreck*, 803 F.2d at 171. Likewise, the existence of similar customers, *Oreck*, 803 F.2d at 172, or means of distributing the product or service, *Amstar*, 615 F.2d at 262, indicate a greater danger of confusion.

The parties have stipulated that both provide package design services to corporations and other business entities requiring such services. Hermsen struggles to distinguish the services and customers of each party but ultimately fails. It is of no consequence that Minturn provides services other than package design. The fact remains that for customers seeking package design Minturn and Hermsen are direct competitors. Ordinarily, these factors would weigh in favor of finding confusion; however, given the only slight resemblance of the marks and the fact that each party also uses its full name on materials displaying the mark, the confusion is negligible. *Cf. Oreck*, 803 F.2d at 173 (similarity of advertising media of little importance where resemblance of marks was slight).

### D

■ The parties use the same general method of advertising—targeted mail—but the format of their mailings is quite different. Hermsen relies on personal letters touting its package design services. These letters are directed to a named individual within a corporation and are followed up by personal phone calls. Minturn relies on a more sophisticated flyer that advertises all of Minturn's services, including package design, emphasizing Minturn's overall expertise in promoting regional grocery brands and its ability to provide all of the services a regional grocery brand needs. Given the sophistication of consumers seeking package design services and the dissimilarity of Minturn and Hermsen's mailings, the fact that both Minturn and Hermsen distribute their literature through the mail is immaterial. *See Blue Bell Bio–Medical v. Cin–Bad, Inc.*, 864 F.2d 1253, 1260 (5th Cir.1989) (trade dress case) (holding not clearly erroneous district court's finding of no actual confusion where consumers of medical carts exercise high degree of care in purchases).

## E

 The parties have stipulated that Hermsen did not adopt its mark with intent to deceive purchasers. There is also no evidence of actual confusion. Minturn is correct in contending that neither intent to deceive nor actual confusion is necessary to prove infringement. *Oreck*, 803 F.2d at 173 (proof of intent and actual confusion are not necessary). However, given the otherwise weak indicia of likelihood of confusion, the absence of evidence of intent to deceive or actual confusion certainly does not help Minturn's case. *Cf. Oreck*, 803 F.2d at 173 ("[c]onsidering Oreck's weak showing on the other factors ... probably nothing short of a showing of actual confusion would be strong enough to swing the case in its favor") (citing *Falcon Rice Mill v. Community Rice Mill*, 725 F.2d 336, 345 (5th Cir.1984)).

## F

Finally, the court considers the degree of care exercised by potential purchasers. Minturn contends that, because both parties use mail solicitation, "businesses may not exercise the same degree of care in selecting a person or entity to provide [package design] services than they would in selecting a person or entity to provide more common types of advertising services." Minturn offers no evidence for this supposition. Minturn does not dispute that customers for the parties' services are generally sophisticated. The services provided are expensive and provided by and to professionals. As the *Oreck* court pointed out: "[t]his is not the sort of purchasing environment in which confusion flourishes." *Oreck*, 803 F.2d at 174; *see also Blue Bell Bio–Medical*, 864 F.2d at 1260.

## III

On the present record, the court is unable to conclude that plaintiff is entitled to relief. Particularly compelling are the overall dissimilarity of the marks and the relative weakness of the Minturn mark. The court finds it difficult to believe that, in a market such as the one in which the parties operate, customers would not take the time to determine with whom they are dealing. The court is reluctant to grant Minturn an effectively exclusive right to use a letter superimposed upon a UPC symbol, particularly when the letters at issue are easily distinguishable by persons of normal intelligence and ordinary sophistication. For all of the reasons stated above, the court concludes that Hermsen's mark does not infringe Minturn's mark. The court has today entered a judgment in favor of Hermsen.