**CATHEY ASSOCIATES, INC., and Phillip R. Kozlow, d/b/a Cosmetic Dentistry Associates, Plaintiffs,**

v.

**Ritchie D. BEOUGHER, Defendant.**

**Civ A. No. 3:97–CV–1270–L.**

United States District Court,
N.D. Texas,
Dallas Division.

April 28, 2000.

Lisa H. Meyerhoff, J. Kevin Gray, Stephen J. Wyse, Jenkens & Gilchrist, P.C., Dallas, TX, for plaintiffs.

John M. Cone, Strasburger & Price, L.L.P., Dallas, TX, for defendant.

### *MEMORANDUM OPINION AND ORDER*

LINDSAY, District Judge.

Before the court are Defendant's Motion for Partial Summary Judgment as to Plaintiff Cathey Associates, Inc, filed December 23, 1997; Defendant's Motion for Summary Judgment as to All Claims of Both Plaintiffs, filed December 23, 1997; and Defendant's Motion for Summary Judgment that Plaintiff's Alleged Service Mark and Alleged Trade Dress are not Eligible for Protection, filed March 30, 1998. Upon consideration of the motions, responses, replies, summary judgment evidence, and the applicable law, the court, for the reasons that follow, **grants** Defendant's Motion for Summary Judgment that Plaintiff's Alleged Service Mark and Alleged Trade Dress are not Eligible for Protection. Defendant's Motion for Partial Summary Judgment as to Plaintiff

Cathey Associates and Defendant's Motion for Summary Judgment as to All Claims of Both Plaintiffs are both **denied as moot.**

## I. *Procedural and Factual Background* [1]

This action was filed on May 28, 1997, and involves *inter alia* claims of alleged service mark infringement, alleged trade dress infringement, and unfair competition. Plaintiff Cathey Associates, Inc. ("Cathey" or "Plaintiff") is a corporation organized and existing under the laws of the State of Texas, having its principal place of business in Dallas, Texas. Plaintiff Cosmetic Dentistry Associates ("CDA" or "Plaintiff") is a joint proprietorship originally comprised of Drs. Philip R. Kozlow and Lynn Tenney, with its principal place of business in Dallas, Texas.[2] Defendant Ritchie D. Beougher, D.D.S. ("Beougher" or "Defendant") is a sole proprietor in the State of Texas, having his principal place of business in Plano, Texas.

Since 1986, CDA has offered a full range of dental services to the public, including cosmetic dentistry. In the mid–1980s, CDA retained Plaintiff Cathey to design an advertising program to promote CDA's cosmetic dental services. As part of the advertising program, Cathey created an advertisement, which was initially unveiled in a series of magazines, that prominently displayed the slogan "I really like my new pearls, but I just love my new smile" (the "Slogan"). Complementing the advertisement is the picture of a female displaying a white toothy smile, information concerning CDA's cosmetic dental services, especially veneer capping, the name "Cosmetic Dentistry Associates" above a small inset picture of Drs. Kozlow and Tenney, and the business address and telephone number of each dentist. CDA began using the advertisement in connection with its cosmetic dental services in 1984. Cathey assigned all of its rights in the advertisement to CDA, but reserved the right to use the advertisement in advertising and promoting Cathey's marketing concepts and design services. Cathey has included the CDA advertisement in various advertising pieces that it distributes throughout the United States. In addition, Cathey has included the advertisement on Cathey's Internet Web site.

In August 1996, Defendant Beougher began using "I really like my new pearls, but I just love my new smile" to advertise and promote his cosmetic dental services, especially the use of laser technology to whiten teeth. Similar to CDA's advertisement, Defendant's advertisements comprised the Slogan with a photograph of a female showing a white toothy smile, information about Dr. Beougher's dental services, the address of his dental practice, telephone number, and inset picture of Dr. Beougher, or Dr. Beougher and others associated with his dental practice at or near the bottom of the advertisement.[3]

Plaintiffs contend that Defendant, by using the same Slogan and similar advertisement as CDA in advertising and promoting his cosmetic dental services, has made a false designation of origin and false representation in commerce in violation of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiffs further contend that by using the same Slogan and similar advertisement as CDA, Defendant has misled and confused the public. In addition to their federal law claims, Plaintiffs have brought state common law claims against Defendant for service mark infringement, trade dress in-

1. The majority of the facts in this case is undisputed. When the facts are disputed, however, the court considers them in the light most favorable to Plaintiffs The court only considers those facts which are necessary to rule on Defendant's motions.

2. Drs. Kozlow and Tenney selected the name "Cosmetic Dentistry Associates" to identify their association. Although Dr. Tenney is now deceased, Dr. Kozlow continues to use the CDA name in connection with his dental practice.

3. The record reflects that Defendant featured the use of a revolutionary new technique using laser technology to whiten teeth in two separate advertisements.

fringement, injury to business reputation and state statutory dilution, unfair competition, and unjust enrichment. Defendant moves for summary judgment on Plaintiffs' claims, contending that Plaintiffs' alleged service mark and alleged trade dress are not eligible for protection, and therefore Defendant is entitled to judgment as a matter of law.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Company,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id., see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Analysis*

Defendant contends that Plaintiffs have established neither a protectable service mark in the slogan "I really like my new pearls, but I just love my new smile," nor a protectable trade dress in the overall composition of the advertisement displaying the Slogan. Therefore, according to Defendant, Plaintiffs cannot prevail on any of the seven claims alleged in Plaintiffs' Original Complaint. Plaintiffs respond that they have established a protectable service mark in the Slogan and protectable trade dress in the overall composition of the CDA advertisement.[4] Plaintiffs also con-

---

**4.** As Plaintiffs have asserted claims under 15 U.S.C. § 1125(a), and because there is no

tend that Defendant infringed Plaintiffs' trade dress by using an allegedly similar format and layout to advertise Defendant's dental services. Defendant seeks summary judgment on all of Plaintiffs' claims, contending that Plaintiffs' alleged service mark and alleged trade dress are not eligible for protection under the Lanham Act.

■ The Lanham Act, which protects unregistered service marks and trade dress, provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1). This statute creates a cause of action for infringement of trademarks, service marks, and trade dress. *See Peaches Entertainment Corp. v. Entertainment Repertoire Assocs., Inc.*, 62 F.3d 690, 692 (5th Cir.1995). Courts use the same considerations for service mark infringement claims as for trademark infringement claims. *Lawfinders Assocs., Inc. v. Legal Research Ctr., Inc.*,

65 F.Supp.2d 414, 425 (N.D.Tex.1998), *aff'd*, 193 F.3d 517 (5th Cir.1999) (*citing Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 191 n. 1, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)).

■ To prevail on their claims for service mark and trade dress infringement, Plaintiffs must show that 1) their mark and trade dress qualify for protection and 2) that Defendant's use of the mark and trade dress creates a likelihood of confusion in the minds of potential consumers. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir.1998) (citations omitted). A service mark is "any word, name, symbol, or device, or any combination thereof" used by a person "to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. " 'Trade dress' refers to the total image and overall appearance of a product" and "may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 251 & n. 3 (5th Cir.1997), *cert. denied*, 523 U.S. 1118, 118 S.Ct. 1795, 140 L.Ed.2d 936 (1998) (citations omitted); *Pebble Beach*, 155 F.3d at 536. With trade dress, the focus of the inquiry is not on isolated elements of the dress, but "whether a combination of features creates a distinctive visual impression, identifying the source of the product." *Id.*

■ The same tests apply in determining whether Plaintiffs' alleged service mark and alleged trade dress are protectable, regardless of whether they are registered or unregistered. *Pebble Beach*, 155 F.3d at 536 (*citing Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768–70, 773–74,

evidence in the record that either the alleged service mark or alleged trade dress are registered with the United States Patent and Trademark Office, the court concludes that

the alleged service mark and alleged trade dress are unregistered and, therefore, uses the standards for unregistered marks in addressing Plaintiffs' claims.

112 S.Ct. 2753, 120 L.Ed.2d 615 (1992)). Both will be protected "if they are inherently distinctive or have achieved secondary meaning in the public's mind, [that is], if the trade dress or [service] mark 'has come through use to be uniquely associated with a specific source.'" *Pebble Beach* 155 F.3d at 536 (*citing Sunbeam,* 123 F.3d at 253 (*quoting Two Pesos,* 505 U.S. at 766 n. 4, 112 S.Ct. 2753)). Trade dress, however, "is not protect[a]ble and cannot be distinctive if it is functional, [that is], if the design 'is one of a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the design trademark protection.'" *Pebble Beach,* 155 F.3d at 536 (*quoting Two Pesos,* 505 U.S. at 775, 112 S.Ct. 2753). Only when a plaintiff's mark is found to be protectable does the question of likelihood of confusion become relevant. *Lawfinders,* 65 F.Supp.2d at 425. "[L]iability for trademark and trade dress infringement hinges upon whether a likelihood of confusion exists in the minds of potential consumers as to the source, affiliation, or sponsorship of the defendant's product or service [because of] the use of the allegedly infringing marks or trade dress." *Pebble Beach,* 155 F.3d at 536–37 (*citing Society of Fin. Exam'rs v. National Ass'n of Certified Fraud Exam'rs, Inc.,* 41 F.3d 223, 227 (5th Cir. 1995); *Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166, 170 (5th Cir.1986)). For the reasons that follow, the court finds that Plaintiffs' alleged service mark and alleged trade dress are not protectable.

### A. *Plaintiffs' Alleged Service Mark*

■■■ To determine whether the phrase "I really like my new pearls, but I just love my new smile" qualifies as a protectable service mark, the court must first consider the strength of the mark. *Lawfinders,* 65 F.Supp.2d at 425. "The strength and distinctiveness of the mark adopted is a key consideration in deciding how much protection should be afforded to the mark." *Minturn Adver., Inc. v. Hermsen Design Assocs., Inc.,* 728 F.Supp.

430, 432 (N.D.Tex.1990)(*citing Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 259 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980)). Marks may be categorized as 1) generic, 2) descriptive, 3) suggestive, 4) arbitrary or 5) fanciful. *Pebble Beach,* 155 F.3d at 540 (*citing Two Pesos,* 505 U.S. at 768, 112 S.Ct. 2753). While once conceived as distinct categories, these labels are now commonly viewed as "central tones in a spectrum" where the strength of the mark and its protection increases as it moves away from generic and descriptive toward arbitrary and fanciful. *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.,* 725 F.2d 336, 346 (5th Cir.1984) (*citing Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981)). The assignment of a word or phrase to one of these categories is important to determine whether, or in what circumstances, the word or phrase is eligible for protection. *Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex.,* 909 F.2d 839, 844 (5th Cir.1990). A generic term, which is never eligible for trademark protection, identifies a genus or class of things or services of which the particular item in question is merely a member. *Id.* at 844 and 845. A descriptive term "identifies a characteristic or quality of the article or service," and may only be protected after proof of secondary meaning. *Id.* A suggestive term suggests, rather than describes, some particular characteristic of a good or service and requires the consumer to exercise his or her imagination in order to draw a conclusion as to the nature of the goods or services. *Id* at 845. Lastly, "arbitrary and fanciful terms or phrases are those which are either coined words or words which are not suggestive of the product or service." *Id.* Words or phrases which fall within the last three categories are inherently distinctive "because their intrinsic nature serves to identify a particular source of a product," *Sunbeam,* 123 F.3d at 252 (citations omitted),

and are eligible for protection without proof of secondary meaning. *Union Nat'l Bank,* 909 F.2d at 844 citations omitted). The proper characterization of a mark is a question of fact. *Lawfinders,* 65 F.Supp.2d at 425 (*citing Union Nat'l Bank,* 909 F.2d at 846; *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,* 698 F.2d 786, 793 (5th Cir.1983)).

 Defendant contends that the phrase "I really like my new pearls, but I just love my new smile" is not eligible for protection for two reasons. First, Defendant avers that the phrase is not used in a trademark sense because it fails to indicate the source of the advertised services and fails to distinguish them from those of others. Second, Defendant contends that even if the phrase is used in a trademark sense, it is nonetheless ineligible for protection because it is not inherently distinctive and has not acquired a secondary meaning. Plaintiffs respond that the phrase is protectable as a service mark and further contend that even if the phrase is not inherently distinctive, it has acquired secondary meaning. The court agrees with Defendant and finds that the phrase is not protectable as a service mark because it does not identify and distinguish either Plaintiffs' services, and does not indicate the source of those services.

Plaintiff CDA offers cosmetic dental services to the public. Plaintiff Cathey is an advertising agency that offers advertising services. Neither of these services, however, is identified by the phrase "I really like my new pearls, but I just love my new smile." The court notes that the phrase in the advertisement is prominently displayed in white letters, positioned against a dark background, and located near the head of the woman in the photograph. The phrase, however, is not used anywhere in the advertisement as a source identifier or distinguishing designation for CDA's cosmetic dental services or Cathey's advertising services. Rather, the source identifier appears to be in the phrase "Cosmetic Dentistry Associates," which is located near the bottom of the advertisement just above the inset photograph of Drs. Kozlow and Tenney.[5] While Plaintiffs contend that the phrase "I really like my new pearls, but I just love my new smile" serves to signify the respective services offered by Plaintiffs, the Lanham Act requires that a service mark "identify and distinguish" Plaintiffs' services from the services of others and "indicate the source of the service." 15 U.S.C. § 1127. A reasonable consumer could conclude that the Slogan is associated with a an advertisement promoting a product designed to whiten teeth. For example, Rembrandt toothpaste is one such product that consumers could reasonably associate with the Slogan. That a consumer could conclude that the advertisement promotes a tooth whitening product undermines Plaintiffs' argument that it identifies and distinguishes Plaintiffs' services from those of others or indicates the source of the services. Because Plaintiffs have failed to establish that their alleged service mark is used to distinguish and identify the source of their services from those of others, and to indicate the source of those services, Plaintiffs cannot establish that their alleged service mark is eligible for protection. Defendant is, therefore, entitled to judgment as a matter of law on Plaintiffs' federal and state law claims of service mark infringement.[6]

---

**5.** The court recognizes that the use of a trade designation such as "Cosmetic Dentistry Associates" would not of itself preclude a second source-identifying mark for CDA's dental services in the advertisement. *See In re Gilbert Eiseman, P.C.,* 220 U.S.P.Q. 89, 91 & n. 1 (Trademark Tr. & App.Bd.1983).

**6.** In *All American Builders, Inc. v. All American Siding of Dallas, Inc.,* 991 S.W.2d 484, 488 (Tex.App.-Fort Worth 1999, no writ), the court, in deciding whether a word or phrase was eligible for protection, used the same criteria and analysis as that used by the Fifth Circuit in *Union Nat'l Bank, Laredo v. Union Nat'l Bank, Texas, cited supra.* Applying this same criteria and analysis, the court finds that Plaintiffs' service mark is not eligible for protection under state common law.

Assuming arguendo that the phrase "I really like my new pearls, but I just love my new smile" satisfied the statutory definition of service mark, Plaintiffs' claims for service mark infringement nevertheless fail because Plaintiffs have not established that their mark is inherently distinctive or that it has acquired secondary meaning. In reaching this conclusion, the court considers the context in which the phrase is used, including how it is used with other words, the service to which it is applied, and the audience to which the service is directed. *See Union Nat'l Bank*, 909 F.2d at 847.

▆▆▆▆ Plaintiffs do not seriously contend that the mark is arbitrary or fanciful, rather they argue that because the phrase subtly hints or intimates at the services provided, it is at best suggestive, and therefore inherently distinctive. The court disagrees. A suggestive term requires a consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods or services. *Union Nat'l Bank*, 909 F.2d at 845. A reasonable consumer need not use his or her imagination to conclude from the phrase "I really like my new pearls, but I just love my new smile" that the services being offered relate to some type of dental service. In fact, dentists often use the term "smile" in conjunction with a visual display of a white toothy smile in advertisements to promote their dental services. As dentists are in the business of repairing teeth and improving smiles, a consumer seeking dental services could conclude, without imagination, that the Slogan indicates that CDA provides some type of dental service. The mark, therefore, may not be classified as suggestive. Instead, the court finds that the phrase more aptly describes a characteristic or quality of Plaintiff CDA's cosmetic dental services – providing beautiful, "new smiles" with the use of CDA's veneer capping technique. "A descriptive mark is only protectable when it has 'acquir[ed] a secondary meaning in the minds of the consuming public.'" *Pebble Beach*, 155 F.3d at 540 (*quoting Zatarains*, 698 F.2d at 790). The court considers the following to determine whether a particular mark has acquired a secondary meaning: 1) length and manner of use of the mark, 2) volume of sales, 3) amount and manner of advertising, 4) nature of use of the mark in newspapers and magazines, 5) consumer-survey evidence, 6) direct consumer testimony, and 7) the defendant's intent in copying the mark. *Pebble Beach*, 155 F.3d at 541; *Lawfinders*, 65 F.Supp.2d at 427.

To establish secondary meaning, Plaintiff CDA contends that it has spent several thousand dollars advertising the CDA advertisement in two magazines, *Ultra Magazine* and *D Magazine*. Plaintiff CDA ran the CDA advertisement in *Ultra Magazine* in July, August and October of 1984, September of 1986, and May of 1987; and in *D Magazine* in September of 1984 and July of 1987. In addition, Dr. Kozlow has displayed the CDA advertisement in his office since some time in 1984, and had seen the advertisement displayed in Dr. Tenney's office prior to his death. Dr. Kozlow also states that the CDA poster has appeared in a marketing publication called the *Dallas Blue Book*, and that he has used the CDA advertisement in exhibitions at Dallas Market Hall on at least two occasions, in 1989 and 1995. *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment That Plaintiffs' Alleged Service Mark and Alleged Trade Dress Are Not Eligible for Protection, Exhibit A at pp. 1–2. Plaintiffs have also provided excerpts of deposition testimony from Darrell Clark and Linda Batton, which they contend demonstrate that consumers associate the CDA advertisement with Dr. Kozlow. Specifically, Mr. Clark testified that when he saw Defendant's advertisement he "assumed that he [Dr. Beougher] had simply contracted with the same ad agency or Dr. Kozlow's office or someone and were … using the same ad or an updated version of it." *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment That Plaintiffs' Alleged Service Mark and Alleged Trade Dress Are Not Eligible for

Protection, Exhibit 1 at p. 36. Linda Batton testified that she "thought [Deposition Exhibit 42] was Phil Kozlow's ad." *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment That Plaintiffs' Alleged Service Mark and Alleged Trade Dress Are Not Eligible for Protection, Exhibit 2 at p. 28. Ms. Batton further testified that what was significant to her was that the "ad was Phil's ad, but somebody else's name was on it." *Id.* at p. 29. When asked why she thought the ad was Phil Kozlow's ad, Ms. Batton responded that she "just remembered Phil's ad and I just thought it was Phil's ad." *Id.* at pp. 28–29. Plaintiffs further contend that the CDA poster has also been used by Plaintiff Cathey in connection with promoting Cathey's advertising services. In the Declaration of Craig Cathey, Mr. Cathey states that the CDA advertisement is prominently displayed in Cathey's office, and has been featured in at least one national marketing publication, the Texas Creative Sourcebook. Mr. Cathey further states that a copy of a Cathey advertisement featuring the CDA advertisement was used in a series of direct mailings in the early 1990s, is shown to almost all Cathey customers and prospective customers, and appears on Cathey's Web site. *See* Plaintiffs' Response to Defendant's Motion for Summary Judgment That Plaintiffs' Alleged Service Mark and Alleged Trade Dress Are Not Eligible for Protection, Exhibit B at pp. 1–2. Having reviewed the evidence, the court concludes that a genuine issue of material fact does not exist regarding the issue of secondary meaning.

During the period of 1984 to 1987, the CDA advertisement was published seven times in two different magazines – five different times in *Ultra Magazine,* and twice in *D Magazine.* The record does not indicate whether these magazines are published weekly, biweekly or monthly, and Plaintiffs present no evidence of how many printed impressions of the CDA ad-

vertisement were made during the specific months in which they were published in the respective magazines.[7] Moreover, the record reflects that the CDA advertisement was last published in *Ultra Magazine* and *D Magazine* in May and July 1987, respectively. The record further reflects that when Dr. Kozlow met Dr. Beougher at a dental meeting in 1984, the CDA advertisement was not in publication, and no press runs of the advertisement had been published for at least five or six years. The record is unclear whether Dr. Kozlow is currently publishing the CDA in advertisements to promote his dental services, or whether CDA published its advertisement at all during the last decade. As evidence of direct consumer testimony, Plaintiffs have provided the testimony of two persons who personally knew Dr. Kozlow and were familiar with his ad. Neither Mr. Clark nor Ms. Batton, however, state that they associate the use of the Slogan with CDA or Cathey or either of the services Plaintiffs provide. While Plaintiffs have presented evidence of two witnesses, who are acquainted with Dr. Kozlow, there is no evidence of any independent consumer surveys to demonstrate that prospective clients associate the CDA advertisement with Dr. Kozlow or Cathey. Plaintiffs have, therefore, failed to establish that relevant consumers associate the mark with CDA or Cathey. Based on these facts, the court finds that Plaintiffs have failed to raise a genuine issue of material fact as to whether Plaintiffs' alleged service mark has acquired secondary meaning in the consumer public. Therefore, even if Plaintiffs' alleged service mark satisfied the statutory definition, Plaintiffs have failed to establish that the mark is distinctive or has acquired secondary meaning.

Because the court finds that the phrase "I really like my new pearls, but I just love my new smile" does not identify and distinguish Plaintiffs' services, does not iden-

---

7. With respect to the publications in the *Dallas Blue Book* and Texas Creative Source-book, the record does not indicate when such publications were made.

tify the source of the services, and is merely descriptive of Plaintiff CDA's cosmetic dental services, no genuine issue of material fact exists on Plaintiffs' federal claims for violation of 15 U.S.C. § 1125(a) or state law claims for service mark infringement. Accordingly, Defendant is entitled to judgment as a matter of law on these claims.

### B. *Plaintiffs' Alleged Trade Dress*

To prevail on a claim of unlawful trade dress infringement, Plaintiffs must first establish that the trade dress qualifies for trade dress protection. *Sunbeam*, 123 F.3d at 251. In determining whether the trade dress is protectable, the court considers three issues: 1) distinctiveness, 2) secondary meaning, and 3) functionality. *Id.* If the court determines that the trade dress is protected, Plaintiffs must then establish that it has been infringed. *Id.* "Infringement occurs only when there is a likelihood of confusion between the products [or services] of the plaintiff and the defendant." *Id.* (citations omitted). Thus, to establish that their trade dress merits trademark protection, Plaintiffs must demonstrate that it is either inherently distinctive or has acquired secondary meaning, and that the trade dress is not functional. " '[I]n general terms, a product feature is functional ... if it is 'essential to the use or purpose of the article or it affects the cost or quality of the article,' that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995)(*quoting Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 850 n. 10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). Whether a trade dress is functional, distinctive or has acquired secondary meaning, and the existence of the likelihood of confusion are questions of fact. *Pebble Beach*, 155 F.3d at 537. The court finds that the alleged trade dress at issue here is not eligible for protection because it is not distinctive and has not acquired secondary meaning.

A trade dress is distinctive and protectable if it serves as an indicator of source. *Pebble Beach*, 155 F.3d at 540. To establish that a trade dress is distinctive of a particular source, Plaintiffs must demonstrate that it is "inherently distinctive," or has become distinctive through acquiring secondary meaning in the minds of the consuming public. *See id.* A trade dress, like other trademarks, may be classified as either generic, descriptive, suggestive, arbitrary or fanciful.[8] With these classifications in mind, the court considers Plaintiffs' trade dress.

Plaintiffs claim trade dress rights to the overall impression conveyed in the CDA advertisement, which includes the following elements: (a) attractive female model; (b) Caucasian; (c) appears to be approximately mid–30s in age; (d) model positioned along left side of advertisement; (e) model shown from head to chest only; (f) below shoulder-length hair; (g) brunette-colored hair; (h) teased hairstyle; (i) erect posture; (j) slight tilt of model's head towards her left; (k) wide smile showing very white teeth; (*l* ) model wearing pinkish-red lipstick; (m) pearl earrings; (n) light colored fur; (o) fur positioned around model's shoulders; (p) low neckline; (q) moderately-sized pearl necklace around model's neck; (r) pearl necklace lifted away from model's neck; (s) long fingernails; (t) pail pink nail polish on fingernails; (u) large jewelry on model's hand; (v) model curving index and third fingers of her right hand around the pearl necklace; (w) model lightly grasping fur with her left hand; (x) flowers visible in background; (y) camera lens focal length selected by photographer causes flowers in background to be out of focus; (z) Mark ["I really like my new pearls, but I just

---

**8.** Having previously explained the meaning of these terms, the court finds it unnecessary to repeat those definitions here.

love my new smile"] ("Mark") in prominent type; (aa) Mark in white letters; (bb) Mark positioned against dark background; (cc) Mark displayed near model's head; (dd) inset picture of practice members; (ee) inset picture positioned at bottom of advertisement; (ff) advertisement includes general business information about CDA's cosmetic dental practice; (gg) business information is located along right side of advertisement directly below Mark; (hh) model's hair is backlit from above; (ii) attribution to source of complimentary pearls along bottom of advertisement, and (jj) attribution to photographer. *See* Plaintiffs' Original Complaint, ¶ 31. Located just below the Slogan is general information about CDA's cosmetic dental services. Included *inter alia* in that information are the following sentences: "Let your inner self shine through, adorned by the beauty of a radiant smile," and "We want you to be as beautiful and confident as you know you can be and to love your smile." At the bottom of the advertisement, to the left of the inset photograph of Drs. Kozlow and Tenney, is the following statement: "Unretouched photo of a beautiful smile that was enhanced by our veneer capping technique." These statements, along with the color photograph, indicate that the advertisement is used to describe and promote CDA's dental services rather than serve as an identifier of source. As the court has determined that Plaintiffs' trade dress is merely descriptive, the court turns to whether it has acquired secondary meaning in the minds of the consuming public. The court has previously determined that Plaintiffs' service mark has not acquired secondary meaning, and now, for the reasons previously stated, concludes that Plaintiffs' have failed to establish that their trade dress has acquired secondary meaning.

As the court has determined that Plaintiffs have failed to establish that their trade dress is eligible for protection because it is not distinctive and has not acquired secondary meaning, it need not reach the issue of infringement.[9] Plaintiffs have failed to raise a genuine issue of material fact with respect to Plaintiffs' claims for trade dress infringement under federal or state common law, and Defendant is, therefore, entitled to judgment as a matter of law.[10]

## IV. *Other State Claims*

Plaintiffs assert common law claims for unfair competition and unjust enrichment, and state statutory claims for injury to business reputation and statutory dilution under the Texas Anti–Dilution Act, Tex. Bus. & Com.Code Ann. § 16.29 (West Supp.2000). To prevail on the statutory claim, Plaintiffs must establish: 1) ownership of a distinctive mark and 2) a likelihood of dilution. *Lawfinders*, 65 F.Supp.2d at 428 (internal quotations omitted). For the reasons previously stated, the court concludes that neither Plaintiffs' service mark nor trade dress are distinctive because they are descriptive without secondary meaning. Furthermore, Plaintiffs present no argument, and the record is void of any evidence, to establish that Plaintiffs' alleged service mark is registered under the Texas Business and Commerce Code.[11] As Plaintiffs' alleged service

---

9. Even if Plaintiffs were able to show that their trade dress was eligible for protection, Plaintiffs' claim for trade dress infringement nevertheless fails because Plaintiffs have not shown a likelihood of confusion between Plaintiffs' trade dress and Defendant's advertisements. The court finds that there are sufficient disparities in the advertisements to conclude that Defendant's use of the mark present no likelihood of confusion.

10. Whether a trademark is protectable is an issue common to an analysis of trademark infringement under both federal and state common law. Because the court has determined that Plaintiffs' trade dress is not protectable under federal law, the court concludes that it is not protectable under state law.

11. The Anti–Dilution Act, § 16.29 requires that a mark be registered under chapter 16 of the Texas Business and Commerce Code or

mark is not protected under title 15 of the United States Code or at common law, because it is descriptive without secondary meaning, the court concludes that Plaintiffs cannot prevail on their anti-dilution claim. Defendant is, therefore, entitled to judgment as a matter of law on this claim.

■ To prevail on a claim of unfair competition, Plaintiffs must establish 1) that their use of the trademark has acquired secondary meaning and 2) that the similarity of the mark used by Defendant's place of business would be likely to confuse the public. *See Hudgens v. Goen*, 673 S.W.2d 420, 423 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). Because Plaintiffs have failed to establish the elements necessary to prevail on their claim of unfair competition, Defendant is entitled to judgment as a matter of law.

■ To recover under a theory of unjust enrichment, Plaintiffs must demonstrate that Defendant has obtained a benefit from Plaintiffs by fraud, duress or the taking of an undue advantage. *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 788 (Tex.App.-Houston [1st Dist.] 1999, no writ)(*citing Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992)). Because Plaintiffs have failed to establish a claim for federal or common law trademark infringement, Plaintiffs cannot establish that a genuine issue of material fact exists as to this claim, and Defendant is, therefore, entitled to judgment as a matter of law.

## V. *Conclusion*

For the reasons previously stated, there is no genuine issue of material fact regarding any of Plaintiffs' claims. Defendant's Motion for Summary Judgment that Plaintiff's Alleged Service Mark and Alleged Trade Dress are not Eligible for Protection is, therefore, **granted.** In light of the court's ruling, the court finds that the issues raised in Defendant's Motion for Partial Summary Judgment, filed December

under title 15 of the United States Code, or

23, 1997, and Defendant's Motion for Summary Judgment on All of Plaintiffs Claims, filed December 23, 1997 are moot, and these two motions are **denied.** Accordingly, this action is hereby dismissed with prejudice. Judgment will be issued by separate document.